**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **HOME OWNERS MANAGEMENT** | § | |
| **ENTERPRISES, INC., as assignee of** | § | |
| **Holmes-Redding Builders, Inc.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:04-CV-2061-BF (H)** |
| | § | |
| **MID-CONTINENT CASUALTY CO.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Home Owners Management Enterprises, Inc. ("Home") and

Defendant Mid-Continent Casualty Company's ("Mid-Continent") motions for summary

judgment, both filed on August 26, 2005.  Both parties filed responses on September 15, 2005,

and Mid-Continent filed a reply on September 23, 2005.  Both parties filed supplemental briefing

on the issues of attorney's fees and prejudgment interest on September 23, 2005, in response to

the Court's order, entered September 16, 2005.

There are two issues upon summary judgment.  The first issue is whether Mid-Continent

had a duty to defend Holmes-Redding against a lawsuit initiated by Sharon and Kevin Twomey

("the Twomeys"), and if so, what damages Home may recover due to Mid-Continent's failure to

defend.  The second issue is whether Mid-Continent has a duty to indemnify Home for the

amounts awarded against Holmes-Redding in an arbitration.

## I.  Material Undisputed Facts

In August 2000, the Twomeys purchased a home from Holmes-Redding, a custom homebuilder.  (*Pl.'s Br. in Supp. of Mot. for Summ. J.* at 2.)  Holmes-Redding is a member of the Home/RWC of Texas Warranty program, and the Twomeys' sales contract for the home included a limited warranty provided by Home.  (*Def.'s Br. in Supp. of Mot. for Summ. J.* at 5.)  A few months after the Twomeys moved into the house, it sustained property damage, including structural and/or cosmetic damage, related to foundation movement.  (*Id.*)  In September 2001 in the District Court of Denton County, Texas, the Twomeys sued Holmes-Redding for the property damage to their home and also named Home as a defendant in the lawsuit.  (*Pl.'s Br. in Supp. of Mot. for Summ. J.* at 2.)  The causes of action listed in the Twomeys' third amended petition included negligence, malice, breach of contract, breach of warranty, violations of the Texas Deceptive Trade Practices Act and the Consumer Protection Act, and fraud.  (*Def.'s App.* at 181-84.)

Holmes-Redding had a commercial general liability insurance policy ("the policy") with Mid-Continent, and upon the initiation of the Twomeys' lawsuit, Holmes-Redding notified Mid-Continent of the suit.  (*Pl.'s Br. in Supp. of Mot. for Summ. J.* at 1-2.)  Mid-Continent replied, indicating this type of loss was not within the scope of coverage and declining to defend against the lawsuit.  (*Id.* at 2.)

Eventually, the Twomeys, Holmes-Redding, and Home submitted their dispute to arbitration.  (*Def.'s Br. in Supp. of Mot. for Summ. J.* at 5.)  The arbitrator awarded the Twomeys damages of $218,000, attorneys fees of $70,000, and expert and arbitration expenses of $49,915.  (*Pl.'s App.* at 156-57.)  The arbitration award additionally stated that Home was liable for any portion of the $218,000 damages award that Holmes-Redding did not pay.  (*Id.*)

2

Home ultimately paid the entire damages award, plus interest, totaling $219,194.60,
(*Def.'s App.* at 247.) and asserted a cross-claim against Holmes-Redding to recover the amount
paid.  (*Def.'s Br. in Supp. of Mot. for Summ. J.* at 6.)  Pursuant to the warranty contract, Holmes-
Redding was contractually obligated to reimburse Home for any amounts paid on its behalf.
(*Id.*)  Holmes-Redding settled the dispute with Home by assigning all of its claims against Mid-
Continent to Home.  (*Id.*)  The remaining amounts owed to the Twomeys under the arbitration
award, $70,000 for attorney's fees, $49,915 for expert and arbitration expenses, and interest on
these amounts, are still unpaid. (*Id.* at 6-7.)

Home initiated this lawsuit in September 2004, alleging that Mid-Continent breached its
contract with Holmes-Redding.  (*Pl.'s Br. in Supp. of Mot. for Summ. J.* at 1.)  Home seeks: (1)
$218,000 that it paid in damages to the Twomeys, (2) $70,000 for the arbitration award against
Holmes-Redding for the Twomeys' attorney's fees, (3) $49,915 for the arbitration award against
Holmes-Redding for the Twomeys' expert and arbitration expenses, (4) $115,205 expended by
Holmes-Redding defending against the Twomeys' lawsuit, (5) $20,316.01 in expert and
arbitration expenses Holmes-Redding expended defending against the Twomeys' lawsuit, (6)
attorney's fees expended by Home in this lawsuit, and (7) prejudgment interest.  (*Id.* at 19-20.)

Home asserts that Mid-Continent breached its insurance contract with Holmes-Redding
by failing to defend Holmes-Redding against the Twomeys' lawsuit and by failing to indemnify
Holmes-Redding for the amounts in the arbitration award.  (*Id.* at 1.)  A breach of contract claim
requires a demonstration of four elements: (1) a valid contract, (2) performance by the plaintiff,
(3) breach by the defendant, and (4) damages caused by the defendant's breach.  *Sport Supply
Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).  The contested aspect of

this claim is whether Mid-Continent breached the insurance contract, thus causing damage to

Holmes-Redding.

## II.  <u>Summary Judgment Standard</u>

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A

"material fact" is one that "might affect" the outcome of the suit.  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986); *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001).  A

"genuine" issue is "real and substantial, as opposed to merely formal, pretended, or a sham."

*Bazan*, 246 F.3d at 489.  Accordingly, a genuine issue of material fact is present if the jury could

potentially find for the non-moving party.  *Anderson*, 477 U.S. at 248; *Harken Exploration Co. v.*

*Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001).

Once a party has made a proper motion for summary judgment, the court reviews the

record as a whole in the light most favorable to the non-moving party.  *Matsushita Elec. Indus.*

*Co, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Time Warner Operation,*

*Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).  The moving party bears the burden of establishing the

absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

*Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).

General principles of contract interpretation govern the interpretation of an insurance

policy, and issues of insurance policy interpretation are questions of law.  *St. Paul Guardian Ins.*

*Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002).  A federal court with diversity

jurisdiction applies state law when interpreting insurance policies.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Harken Exploration Co.*, 261 F.3d at 471.

The insured bears the burden of demonstrating that a third-party claim is within the coverage of its insurance policy.  *Harken Exploration Co.*, 261 F.3d at 471.  The insurer then bears the burden of illustrating that an exclusion contained within the policy applies.  *Id.*  "If multiple interpretations are reasonable, [the court] must construe the [policy] against the insurer."  *St. Paul Fire & Marine Ins. v. Green Tree Fin. Corp. - Tex.*, 249 F.3d 389, 392 (5th Cir. 2001).

### III.  <u>Issue One: Did Mid-Continent Have a Duty to Defend?</u>

## A.  When the Duty to Defend Arises

The first issue before the Court is whether Mid-Continent had a duty to defend Home against the Twomeys' lawsuit.  The insurance policy controls the issue of what triggers Mid-Continent's duty to defend.  An insurer has a duty to defend claims by third-parties that are within the scope of the policy.  *See, e.g., Harken Exploration Co.*, 261 F.3d at 471; *Gulf States Ins. Co. v. Alamo Carriage Serv.*, 22 F.3d 88, 90 (5th Cir. 1994).  When examining whether an insurer has a duty to defend, Texas follows the "eight corners" rule, which means that the court only examines the language in the insurance policy and the claims against the insured in the most recent petition to determine whether the insurer has a duty to defend.  *Harken Exploration Co.*, 261 F.3d at 471.  "The duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy."  *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 155 (Tex. App. --Houston 1990).  To determine whether the claim falls within the scope of the insurance policy, the court examines the

facts of the claim to determine whether the facts alleged are within the policy's coverage.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *Houston Petroleum Co.*, 830 S.W.2d at 155.  If the complaint alleges one cause of action within the scope of the policy, it triggers the duty to defend, and the insurer must defend against the entire lawsuit.  *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995) *overruled on other grounds by Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000); *Green Tree Corp.*, 249 F.3d at 391.

Section I of the insurance policy addresses coverage.  (*Def.'s App.* at 12.)  Coverage A. of Section I outlines when Mid-Continent must pay for bodily injury and property damage.  (*Id.*)  Subsection (b) of Coverage A. provides that the policy applies to property damage if such property damage "is caused by an 'occurrence' that takes place in the 'coverage territory and the . . . 'property damage' occurs during the policy period." (*Id.*)  The policy defines "an occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 23.)  The parties do not dispute that the events underlying the Twomeys' lawsuit occurred within the "coverage territory" and during the "policy period."

**B.  Definition of "An Occurrence"**

The contested issue is whether the foundation damages caused by Holmes-Redding's negligence fall within the definition of "an occurrence" and thus constitute "property damage" within the scope of the  policy.  The policy defines "an occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id.*  The Fifth Circuit has defined "an accident" as "damage that is unexpected, unforeseen or undesigned happening or consequence of an insured's negligent behavior."  *Argonaut Sw. Ins. Co. v.*

6

*Maupin.*, 500 S.W.2d 633, 635 (Tex. 1973) (cited in *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 725 (5th Cir. 1999)). The insured's intent and the "reasonably foreseeable effect" of the insured's conduct guide the determination of whether conduct constitutes "an accident." *Mid-Century Ins. Co. of Tex. v. Lindsey*, 997 S.W.2d 153, 155 (Tex. 1999).

Two lines of cases address what is and what is not "an occurrence" under standard commercial general liability insurance policies. The first line of cases begins with the Texas Supreme Court's decision in *Argonaut Southwest Insurance Co. v. Maupin*, 500 S.W.2d 633. The court in *Maupin* held that intentional torts committed by an insured do not constitute "an occurrence" and thus do not trigger an insurer's duty to defend. *Id.* at 723; *see also Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827-28 (Tex. 1997) (concluding that an intentional invasion of privacy was not an accident constituting "an occurrence" under the applicable insurance policy); *S. Farm Bureau Cas. Ins. Co. v. Brock*, 659 S.W.2d 165, 166-67 (Tex. App. -- Amarillo 1983, writ ref'd n.r.e.) (holding that damages sustained from the insured purposefully hitting someone else's car were not the result of "an occurrence").

The second line of cases begins with the Texas Supreme Court's decision in *Massachusetts Bonding & Insurance Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396 (Tex. 1967). The court in *Orkin*, 416 S.W.2d 396, addressed whether the insured's negligence could constitute "an accident" within the insurance policy's definition of "an occurrence." *Id.* at 400. The court concluded that the term "accident" includes "negligent acts of the insured causing damage which is undesigned or unexpected." *Id.* Courts have relied upon *Orkin*, 416 S.W.2d 396, to define "an occurrence" to include claims of negligent or faulty workmanship. *See, e.g.,*

*Grapevine Excavation, Inc.*, 197 F.3d 720, 725-26; *Hartford Cas. Co. v. Cruse*, 938 F.2d 601, 605 (5th Cir. 1991); *CU Lloyd's of Tex. v. Main Street Homes, Inc.*, 79 S.W.3d 687, 693 (Tex. App. -- Austin 2002).

Federal district courts and state courts have recently disagreed about whether faulty or negligent workmanship can constitute "an occurrence."  Many courts follow the reasoning in *Orkin*, 416 S.W.2d 396.  *Great Am. Ins. Co. v. Calli Homes, Inc.*, 236 F.Supp.2d 693, 699 (S.D. Tex. 2002); *see, e.g., Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders, Inc.*, 215 F.Supp.2d 783, 788 (E.D. Tex. 2002); *E & R Rubalcava Const., Inc. v. Burlington Ins. Co.*, 147 F.Supp.2d 523, 527 (N.D. Tex. 2000); *Ins. Co. of N. Am. v. McCarthy Bros. Co.*, 123 F.Supp.2d 373, 376 (S.D. Tex. 2000); *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 840 (Tex. App. --Dallas 2004, pet. filed).  But, other courts reach the opposite conclusion and decline to extend the definition of "an occurrence" to "allegation[s] of failure to comply with design or engineering specifications."  *Calli Homes, Inc.*, 236 F.Supp.2d at 698; *see, e.g., Lamar Homes, Inc., v. Mid-Continent Cas. Co.*, 335 F.Supp.2d 754, 760 (W.D. Tex. 2004); *Jim Johnson Homes, Inc. v. Mid-Continent Cas. Co.*, 244 F.Supp.2d 706, 716 (N.D. Tex. 2003); *Malone v. Scottsdale Ins. Co.*, 147 F.Supp.2d 623, 628 (S.D. Tex. 2001); *Devoe v. Great Am. Ins.*, 50 S.W.3d 567, 571 (Tex. App. --Austin 2001).

The Texas Supreme Court further clarified how to distinguish between intentional and negligent conduct in *Trinity Universal Insurance Co. v. Cowan*, 945 S.W.2d at 828.  In that case, the court examined whether an insurer had a duty to defend against a lawsuit caused by the intentional distribution of revealing photographs of Cowan.  *Id.*  The court distinguished between intentional acts and negligent acts by examining whether the insured intended to produce the

result.  *Id.*  The court also explained that, when distinguishing between intentional and negligent

acts, the inquiry is not whether "an actor intended to engage in the conduct that gave rise to the

injury."  *Id.*  Instead, courts should focus on whether the actor reasonably anticipated the

consequences."  *Id.*  The court cited *Orkin*, 416 S.W.2d 396, for the proposition that negligent

conduct does constitute "an accident" within the definition of "an occurrence."  *Cowan*, 945

S.W.2d at 827.

The Fifth Circuit provided some recent guidance on this issue.  In *Federated Mutual*

*Insurance Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, the court considered whether

Maryland Lloyds Insurance Company had a duty to defend Grapevine Excavation against a

lawsuit that arose from faulty excavation, backfilling, and compacting work that Grapevine

Excavation performed in connection with the construction of a parking lot.  *Id.* at 722.  The

causes of action against Grapevine Excavation included breach of contract, negligence, and

violations of the Texas Deceptive Trade Practices Act.  *Id.*  One of the key issues was whether

Grapevine's negligent conduct constituted "an occurrence" under the applicable insurance policy.

*Id.* at 723-26.  Discussing Texas state and federal court decisions following the reasoning in

*Orkin*, 416 S.W.2d 396, the Fifth Circuit stated that "[m]any of these cases have involved claims

for damage caused by an insured's defective performance or faulty workmanship . . . [and] courts

have consistently held that damage wreaked on the work product of a third party-as opposed to

that of the insured is presumed to have been unexpected and, therefore, constitutes an accident or

an occurrence."  *Grapevine Excavation Co.*, 197 F.3d at 725. (citing *Lafarge Corp.*, 61 F.3d at

395; *Cruse*, 938 F.2d at 604-05; *Travelers Ins. Co. v. Volentine*, 578 S.W.2d 501, 503 (Tex. App.

--Texarkana 1979); *Employers Cas. Co. v. Brown-McKee, Inc.*, 430 S.W.2d 21, 24 (Tex. Civ.

9

App. --Tyler 1968, writ ref'd n.r.e.)).  The court, relying on *Orkin*, 416 S.W.2d 396, and its

progeny, ultimately concluded that Grapevine's negligent conduct constituted "an occurrence,"

triggering Maryland's duty to defend.  *Grapevine Excavation Co.*, 197 F.3d at 726 (stating "[the]

petition alleges that GEI acted negligently - that is, 'caus[ed] damage which is undesigned and

unexpected'- which, if proved to be true, constitutes an 'accident' within the definition ascribed

to that term by the Texas Supreme Court") (quoting *Orkin*, 416 S.W.2d at 400).

        In accordance with *Grapevine Excavation, Inc.*, 197 F.3d 720, the Court holds that

Holmes-Redding's negligent conduct constitutes "an occurrence" as defined in the policy.  The

Court reaches this decision by examining the intent of Holmes-Redding.  *See Cowan*, 945 S.W.2d

at 828 (indicating that courts should examine the intent of the insured when deciding whether an

act was an accidental "occurrence").  The Twomeys never alleged that Holmes-Redding intended

to cause foundation damage to the home.  Instead, the Twomeys claimed that Holmes-Redding

negligently caused the foundation damage.  (*Def.'s App.* at 181.)  An allegation of negligence

constitutes an accidental "occurrence" under the policy and is sufficient to trigger Mid-

Continent's duty to defend.  *See Grapevine Excavation Co.*, 197 F.3d at 725; *Cruse*, 938 F.2d at

604-05 (holding that an insured's negligent conduct constitutes "an occurrence" under the

applicable insurance policies).  "It is well settled that an insurer's duty to defend is triggered if at

least one of several claims in the plaintiff's complaint potentially falls within the scope of

coverage, even if other claims do not.  *Grapevine Excavation Co.*, 197 F.3d at 726.  Under the

"eight corners" of the insurance policy and the causes of action alleged in the Twomeys' petition,

Mid-Continent had a duty to defend Holmes-Redding.  *Harken Exploration Co.*, 261 F.3d at 471

(outlining the "eight corners" rule).

**C.  Damages Arising from Mid-Continent's Failure to Defend**

Having established that Mid-Continent had a duty to defend Holmes-Redding against the Twomeys' lawsuit, the Court turns to the subsidiary issue of what Home may recover due to Mid-Continent's failure to defend.  As the assignee of Holmes-Redding, Home "stands in the shoes of [its] assignor" and thus is entitled to any relief Holmes-Redding itself could have received.  *Fed. Deposit Ins. Corp. v. Bledsoe*, 989 F.2d 805, 810 (5th Cir. 1993).

Home is seeking to recover: (1) $115,205 in legal fees incurred by Holmes-Redding defending against the Twomeys' lawsuit, and (2) $20,316.01 in expert and arbitration expenses incurred by Holmes-Redding defending against the Twomeys' lawsuit.  (*Pl.'s Br. in Supp. of Mot. for Summ. J.* at 19.)  Mid-Continent has not disputed these two amounts, which total $135,521.01. Because these damages arise from Mid-Continent's failure to defend Holmes-Redding, the Court holds that Home may recover both the legal fees and expert and arbitration expenses incurred by Holmes-Redding.  *See Miller v. Robertson*, 266 U.S. 243, 258 (1924) (stating that "[o]ne who fails to perform his contract is justly bound to make good all damages that accrue naturally from the breach; and the other party is entitled to be put in as good a position pecuniarily as he would have been by performance of the contract").

## IV.  Does Mid-Continent Have a Duty to Indemnify?

Whether an insurer has a duty to indemnify and a duty to defend are two separate inquiries.  *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).  The duty to indemnify is based upon the facts underlying the pleadings and the resulting liability. *Heyden Newport Chemical Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 25 (Tex. 1965).  The actual facts establishing liability trigger the duty to indemnify.  *Cowan*, 945 S.W.2d at 821.

Part 1(a) of Coverage A. of the insurance policy provides that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.'" (*Pl.'s App.* at 6.)  To determine whether Mid-Continent must indemnify Home, the Court must consider two issues.  The first issue is whether the damages awarded to the Twomeys resulted from "property damage" as defined in the insurance policy.  The second issue is whether Holmes-Redding became "legally obligated" to pay such damages.

## A.  Whether the Damages Were a Result of "Property Damage"

Similarly to the policy's duty to defend provisions, the Court must examine whether the Twomeys' "property damage" resulted from "an occurrence" to decide whether Mid-Continent has a duty to indemnify.  This determination involves two issues.  First, did the facts underlying the arbitration award constitute "an occurrence" within the policy's definition?  Second, were the damages received by the Twomeys compensation for "property damage" caused by "an occurrence?"

The facts underlying the arbitration award did constitute "an occurrence."  At the arbitration, the Twomeys alleged that negligent design and construction caused damages to their home. (*Pl.'s Br. in Supp. of Mot. for Summ. J.* at 16.)  The negligent design and construction included claims that the foundation beams were not dug in accordance with design specifications and that reinforcing steel cables contained in the foundation sunk to the bottom of the concrete slab during construction.  (*Id.* at 17.)  As previously discussed, an insured's negligent conduct can constitute "an occurrence" within standard insurance policies' definition of such.  *See Grapevine Excavation Co.*, 197 F.3d at 725; *Cruse*, 938 F.2d at 604-05 (holding that an insured's negligent conduct constitutes "an occurrence" under the applicable insurance policies).  Thus, the damages

12

resulting from Holmes-Redding's negligent construction and design fall within the insurance

policy's definition of "property damages."

The arbitration award received by the Twomeys did represent compensation for the

"property damage" caused by Holmes-Redding's negligence, a fact Mid-Continent does not

dispute.  The damages the arbitrator awarded the Twomeys were to compensate them for repairs

necessitated by the faulty foundation, including potential foundation replacement and cracks in

the walls and slab.  (*Id.*)  The other amounts the arbitrator awarded represented expenses incurred

by the Twomeys in pursuing the lawsuit against Holmes-Redding for this property damage.

**B.  Whether Holmes-Redding Became "Legally Obligated" to Pay Damages**

Having established that the Twomeys' damages constitute compensation for "property

damage" within the policy, the Court now considers whether Holmes-Redding was "legally

obligated" to pay the damages.  Because the underlying lawsuit with the Twomeys has already

resulted in a judgment, the arbitration award conclusively establishes Holmes-Redding's legal

obligation for damages.  The arbitration award caused Holmes-Redding to become legally

obligated to pay the following three amounts, plus interest: (1) damages of $218,000, (2)

attorneys fees of $70,000, and (3) expert and arbitration expenses of $49,915.  (*Def.'s App.* at

240-41.)  Pursuant to the arbitration award, Holmes-Redding is "legally obligated" for these

amounts, unless Mid-Continent illustrates that an applicable exclusion applies.  *See Harken*

*Exploration Co.*, 261 F.3d at 471 (explaining that the insurer bears the burden of demonstrating

that a policy exclusion applies).

Mid-Continent argues that it does not have a duty to indemnify Home for the $218,000 in

damages Home paid the Twomeys pursuant to the arbitration award because an exclusion in the

insurance policy applies to this portion of the arbitration award.  (*Def.'s Br. in Supp. of Mot. for Summ. J.* at 14.)  Exclusion b. of the insurance policy excludes coverage for "property damages" that the insured becomes legally obligated to pay by assuming liability in a contract.  (*Def.'s App.* at 12.)  The exclusion does not apply to "liability for damages . . . that the insured would have in the absence of the contract or agreement."  (*Id.*)

The Fifth Circuit addressed an exclusion with identical language to Exclusion b. in *Grapevine Excavation, Inc.*, 197 F.3d at 726.  In that case, Grapevine Excavation was a subcontractor, who, in its contract with the contractor, agreed to indemnify the contractor and "hold it harmless for claims arising both from conduct of specified third parties and from its own conduct."  *Id.* at 726-27.  Grapevine Excavation was suing its insurers to recover amounts for which it was liable due to its negligent construction of a parking lot.  *Id.* at 722.  The court determined that such an exclusion "operates to deny coverage when the insured assumes responsibility for the conduct of a third party."  *Id.* at 726.  The court then concluded that the exclusion was inapplicable because Grapevine Excavation would have been liable to the contractor because of  its negligence, regardless of its contractual duty to indemnify the contractor.  *Id.* at 727

Similarly to *Grapevine Excavation, Inc.*, 197 F.3d 720, Holmes-Redding would have been liable for $218,000 in damages to the Twomeys, regardless of its warranty contract with Home.  If Holmes-Redding did not have a warranty contract with Home, Holmes-Redding alone would have been liable for the Twomeys' damages.  Accordingly, the damages portion of the arbitration award does not fall within the scope of Exclusion b. because the exclusion does not apply to "liability for damages . . . that the insured would have in the absence of the contract or

14

agreement." (*Def.'s App.* at 12.)  In addition, as the court indicated in *Grapevine Excavation, Inc.*, 197 F.3d 720, this type of exclusion "operates to deny coverage when the insured assumes responsibility for the conduct of a third party," not to deny coverage when the insured assumes responsibility for its own conduct. *Id.* at 726.

Mid-Continent next argues that Home's payment of the damages extinguished Holmes-Redding's legal obligation. (*Def.'s Br. in Supp. of Mot. for Summ. J.* at 13.)  Mid-Continent's duty to indemnify depends upon the type of insurance policy.  When construing an insurance policy, the court's role is to effectuate the plain meaning of the language in the policy.  *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998).  Bearing this principle in mind, the insurance policy provides that Mid-Continent will indemnify Holmes-Redding for any damages that it becomes *legally obligated* to pay.  (*Pl.'s App.* at 6.)  The policy does not limit this duty to indemnify to damages the insured has *actually* paid.

When examining an insurer's duty to pay its insured for damages, courts traditionally distinguish between liability contracts and indemnity contracts.  *See, e.g., Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 836 F.2d 850, 853-54 (5th Cir. 1988); *Conoco, Inc. v. Republic Ins. Co.*, 819 F.2d 120, 122 (5th Cir. 1987); *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 598 (6th Cir. 2004).  "In a liability contract, the insurer agrees to cover *liability* for damages."  *Cont'l Oil Co. v. Bonanza Corp.*, 677 F.2d 455, 459 (5th Cir. 1982) (emphasis in original).  "In an indemnity contract, by contrast, the insurer agrees to reimburse expenses to the insured that the insured is liable to pay and has paid."  *Id.*  The following is an example of language from an indemnity contract: "It is agreed that if the Assured . . . shall have become liable to pay, and *shall have in fact paid*, any sums or sums in respect of any . . . claim . . . [w]e . . . will pay to the Assured such proportion of

15

the sum or sums so paid for such loss." *Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 129 F.3d 781, 786 (5th Cir. 1997) *vacated on other grounds*, 706 F.2d 1365 (5th Cir. 1983) (emphasis added).  The language in Mid-Continent's insurance contract with Holmes-Redding contains no such language.

The policy language resembles that of a traditional liability contract because it provides that Mid-Continent "will pay those sums that the insured becomes legally obligated to pay." (*Def.'s App.* at 12.)  *See Combs*, 354 F.3d at 597-98 (interpreting language in an insurance contract providing that the insurance company will cover damages the insured becomes "legally obligated to pay" to indicate a liability contract).  Because the policy is a liability contract, Mid-Continent's duty to indemnify Holmes-Redding arose as soon as the court rendered a judgment. *See Young Men's Christian Ass'n of Metro. Fort Worth v. Commercial Standard Ins. Co.*, 552 S.W.2d 497, 504 (Tex. Civ. App. --Fort Worth 1977, writ ref'd n.r.e.).  Mid-Continent's duty to indemnify continues until the judgment against Holmes-Redding is satisfied.  *Id.*  (stating that "[t]he obligation to pay continues until the judgment is satisfied").  Although Home paid the damages portion of the arbitration award, the judgment has not yet been completely satisfied because the portions representing legal fees and expert expenses remain unpaid.  (*Def.'s Br. in Supp. of Mot. for Summ. J.* at 22.)  Thus, Mid-Continent's duty to indemnify for the entire award, including the damages portion, still exists.

Mid-Continent also has a duty to indemnify Home for the remaining portions of the judgment - $70,000 in attorney's fees and $49,915 in expert expenses.  Although these portions of the arbitration award remain unpaid, Mid-Continent's duty to indemnify Home for these amounts arose as soon as the court rendered the judgment against Holmes-Redding.  *Young Men's*

16

*Christian Ass'n*, 552 S.W.2d at 504.  Accordingly, Mid-Continent must indemnify Home for these amounts.

## V. <u>Should Home Receive Pre-Judgment Interest and Attorney's Fees?</u>

**A.  Attorney's Fees**

Home requests attorney's fees it incurred in this litigation, totaling $135,000.  (*Pl.'s Corrected Mot. for Summ. J.* at 3.)  "Attorney's fees may not be recovered unless provided for by statute or by contract between the parties."  *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992).  Section 38.001 of the Texas Civil Practice and Remedies Code provides that a party may recover reasonable attorney's fees on a claim based upon a written or oral contract.  TEX. CIV. PRAC. & REM. CODE. ANN. § 38.001 (Vernon 1997).  Section 38.006, however, provides that courts cannot award attorney's fees in a case involving an insurance contract covered under four enumerated provisions of the Insurance Code.  TEX. CIV. PRAC. & REM. CODE. ANN. § 38.006 (Vernon 1997).

Because § 38.006 seemingly could apply to situations such as the one in this case, the Fifth Circuit certified the question of whether attorney's fees were recoverable under § 38.001 in a breach of contract action by an insured against its insurer.  *Grapevine Excavation, Inc.*, 197 F.3d at 729 *question certified by Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 730 (5th Cir. 1999).  The Texas Supreme Court concluded that in "a policyholder's successful suit for breach of contract against an insurer . . . the insurer is liable for reasonable attorney's fees incurred in pursuing the breach of contract action under section 38.001."  *Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000) *answer to certified question conformed to*

17

*Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 241 F.3d 396 (5th Cir. 2001).

Accordingly, Home may receive attorney's fees pursuant to § 38.001.

Home must meet the requirements of § 38.002 before it may recover attorney's fees. Section 38.002 requires that: (1) the party seeking attorney's fee is represented by counsel, (2) the party presents its claim to the opposing party or its agent, and (3) the party has not tendered payment within thirty days of presenting it to the opposing party.  TEX. CIV. PRAC. & REM. CODE. ANN. § 38.002 (Vernon 1997).  Mid-Continent does not contest that these requirements are satisfied.  First, Holmes-Redding is represented by counsel.  Second, Holmes-Redding, through its attorney, presented its demand that Mid-Continent perform under the policy twice, once on December 27, 2001, and again with its revised petition.  (*Pl.'s Br. in Resp. to the Ct.'s Order* at 3-4.)  The presentment requirement is generally satisfied by a demonstration that plaintiff presented a claim to defendant and defendant did not perform.  *See France v. Am. Indem. Co.*, 648 S.W.2d 283, 285-86 (Tex. 1983).  Third, neither party has alleged that Home tendered payment within thirty days of presenting the claim to Mid-Continent.  Because these requirements are met, Mid-Continent must pay Home its reasonable attorney's fees, totaling $135,000.

**B.  Prejudgment Interest**

Home also seeks prejudgment interest on the damages arising from Mid-Continent's failure to defend and failure to indemnify.  (*Pl.'s Br. in Supp. of Mot. for Summ. J.* at 20.) "Prejudgment interest is 'compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment.'"  *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 499 (5th Cir. 2002) (quoting *Johnson & Higgins of Tex., Inv. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528

18

(Tex. 1998)).  The Court has discretion to grant prejudgment interest based upon an enabling statute or upon general principles of equity.  *Int'l Turbine Servs., Inc.*, 278 F.3d at 499.

The arbitration award outlines the interest rate and date of accrual on the amounts awarded to the Twomeys.[1]  (*Pl.'s App.* at 156-57.)  The arbitration award sets the interest rate at ten percent, accruing sixty days from the date of the award.  Interest has accrued at this rate on the unpaid portions of the award - $70,000 in attorney's fees and $49,915 in expert and arbitration expenses - since May 17, 2003, which was sixty days after the March 18, 2003 award date.  The interest for these two portions of the arbitration award is $28,549.15.[2]  Interest has not been accruing on the damages portion of the arbitration award because Home already paid that portion of the award.  (*Def.'s App.* at 247.)  Mid-Continent has a duty to indemnify for the amount of interest Home actually paid on the damages award, which is $1,194.60,[3] in addition to the $28,549.15 in interest on the awards for attorney's fees and expert and arbitration expenses.

As to the prejudgment interest on the attorney's fees, expert expenses, and arbitration expenses arising from Mid-Continent's failure to defend, the parties have stipulated to a rate of ten percent, (*Pl.'s Br. in Resp. to the Ct.'s Order* at 6; *Def.'s Supplemental Br. in Resp. to Ct. Order* at 4.) and Home concedes that a fair date of accrual is when Holmes-Redding started

---

[1]Technically, the amounts in the arbitration award for interest are post-judgment interest on those awards.

[2] The total award was $119,915.  The annual interest payment, using a ten percent interest rate, is $11,991.50.  The interest payment per diem is $32.85.  The total interest on May 17, 2005, after two years, was $23,983.  An additional $4566.15 is added to that amount, representing the 139 days since May 17, 2005 that interest has been accruing at a rate of $32.85 per diem.

[3]Home paid $219,194.60, $218,000 of which was for damages, and $1,194.60 of which was for interest accruing pursuant to the terms of the arbitration award.  (*Def.'s App.* at 247.)

incurring legal expenses on November 1, 2001.  (*Pl.'s Br. in Resp. to Ct. Order* at 7.)  The total

damages arising from Mid-Continent's failure to defend is $135,521.01.  The interest, accrued at

an annual rate of ten percent since November 1, 2001, totals $38,893.73.[4]

## VI.  Conclusion

The Court holds that Mid-Continent had a duty to defend Holmes-Redding against the

underlying lawsuit.  Because of Mid-Continent's breach of this duty to defend, the Court awards

Home $135,521.01, which represents Holmes-Redding's attorney's fees, expert expenses, and

arbitration expenses incurred defending against the Twomeys' lawsuit.  The Court also holds that

Mid-Continent has a duty to indemnify Home for the amounts the court awarded the Twomeys

against Holmes Redding, which total $337,915, representing a damages award, an attorney's fees

award, and an arbitration and expert expenses award.  The Court also awards Home its attorney's

fees incurred in defending against this lawsuit, totaling $135,000.  The Court awards Home

prejudgment interest, totaling $68,637.48.  For the forgoing reasons, Plaintiff Home Owners

Management Enterprises, Inc.'s, as assignee of Holmes-Redding Builders, Inc., Motion for

Summary Judgment is GRANTED.  Therefore, Defendant Mid-Continent Casualty Company's

Motion for Summary Judgment is DENIED.

---

[4]The total interest accrued since September 23, 2005 was $38,522.43 with $37.13 added
per diem since September 23, 2005.  (*Pl.'s App. to Supplemental Br.* at 35.)

SIGNED this 3rd day of October, 2005.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE